**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-cr-0006 (RCL)** |
| **v.** | : | |
| | : | |
| **GARY SMITH,** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Gary Smith to a sentence of 90 days' home detention, three years' probation, 60 hours of community service, and $500 in restitution.

## I.    Introduction

Defendant Gary Smith, a 71-year-old retiree from Casco, Michigan, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

Defendant Smith pleaded guilty to one count of violating 18 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of home detention is appropriate in this case because Smith (1) assembled with other rioters on the East Front of the Capitol; (2) while standing on the steps of the

---

[1] The approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Capitol, was only yards away from several other rioters who yelled at, shoved, sprayed with chemical irritants, and struck police officers to create a pathway and enable entry for rioters to enter the Capitol through the Rotunda Doors; (3) after the combatants had successfully overrun the officers, entered the Capitol through the Rotunda Doors with Kuecken and other rioters at approximately 3:02 p.m.; and, (4) paraded inside the Rotunda for approximately three minutes until he and Kuecken were told to leave by at least one police officer.

The Court must also consider that Smith's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who were trying to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, the facts and circumstances of Smith's crime support a sentence of 90 days' home detention in this case.

## II.   Factual and Procedural Background

### The January 6, 2021 Attack on the Capitol

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 33 (Statement of Offense), at 1-7.

### Defendant Smith's Role in the January 6, 2021 Attack on the Capitol

On January 5, 2021, Gary Smith and Deborah Kuecken left Michigan and traveled to Washington, D.C. to attend the "Stop the Steal" rally scheduled to take place on January 6, 2021 at the Ellipse near the White House. Following their arrival at Union Station in Washington, D.C., Kuecken and Smith walked to the East Front of the United States Capitol and joined other rioters who assembled on the steps of the Capitol.

On the morning of January 6, 2021, bicycle racks had been installed on the grounds of the East Front of the Capitol and United States Capitol Police Officers were manning the racks to impede efforts by trespassers to gain access to the Capitol. At approximately 2:00 p.m., rioters

began to fight with the police officers, overran the barricades, and gained access to the steps on the East Front. Just a few minutes after reaching the police line on the East Steps, rioters forced their way past police assembled at the base of the steps and filled the entirety of the East Front of the Capitol. *See* Image 1.

Image 1



Smith and Kuecken were among those who were present on the Capitol steps after police attempting to protect the steps had been overrun by rioters.  The rioters then breached the Rotunda Doors (also known as the Columbus Doors) of the Capitol and flooded into the Capitol. Kuecken, encircled in yellow, appears in  Images 2-4 on the steps on the East Front of the Capitol.

Image 2          Image 3          Image 4



Smith, encircled in yellow in Images 5 and 6, and also shown in Image 7, stood alongside

Kuecken on the steps on the East Front of the Capitol.

Image 5          Image 6          Image 7



Rioters first breached the Rotunda Doors at approximately 2:38 p.m. Several of them yelled at, shoved, sprayed with chemical irritants, and struck police officers to create a pathway and enable other rioters to enter the Capitol through the Rotunda Doors. At approximately, 3:02 p.m., Kuecken and Smith followed other rioters as they entered the Capitol through those doors. *See* Image 8.[2]

Image 8



From approximately 3:02 to 3:05 p.m., Smith and Kuecken paraded with other rioters inside the Rotunda. *See* Images 9 and 10.

---

[2] *See also,* https://www.youtube.com/watch?v=z1gODZvbhqs&t=1224s. Timestamp 1:15:10-1:15:25.

Image 9



Image 10



At approximately 3:05 p.m., police officers began to clear the rioters from the Rotunda.

*See* Image 11.

Image 11



Smith and Kuecken were among those rioters the police cleared from the Rotunda: both were told to leave the Rotunda by at least one police officer. They followed the officer's orders and exited the Capitol through the Rotunda doors at approximately 3:06 p.m. *See* Image 12.[3]

Image 12



Smith's Post-Arrest Interview with the FBI

On January 12, 2023, Smith volunteered to participate in a post-arrest interview conducted by the FBI. During the interview, he admitted that he traveled with Deborah Kuecken from Michigan to Washington, D.C. to attend what he thought was going to be a rally by then President

---

[3] *See also,* https://www.youtube.com/watch?v=z1gODZvbhqs&t=1224s. Timestamp 1:18:33.

Trump related to the certification of the election by Congress. Although they arrived in the Washington, D.C. area on January 5, 2021, they missed the rally the next morning, took the Metro to Union Station, and from there went to the East Front of the Capitol.

Smith stated that he and Kuecken followed the crowd on the East Front of the Capitol. He stated that he and Kuecken did not rush to the Capitol along with many of the other rioters because he walks with a cane and would not have been able to keep up with the flow of the rioters. He acknowledged that he and Kuecken went up the stairs on the East Front of the Capitol and went to what he characterized as the "porch" of the Capitol. While on the "porch," Smith stated that he recalled seeing the doors to the Capitol closed, but later saw people going into the building and told Kuecken, "Let's go take a look."

Smith stated that when police told him and Kuecken to leave the Capitol, he knew something was going to happen and he and Kuecken exited the Capitol through the same doors that they had gained entry to the building. Smith added that he did not post any photos or comments publicly to social media. He denied having seen any violence.

*The Charges and Plea Agreement*

On October 21, 2022, the United States charged Smith and Kuecken by criminal complaint with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 1. On October 27, 2022, Smith and Kuecken voluntarily surrendered to the FBI office in the Eastern District of Michigan. ECF 5, 6. On January 4, 2023, Smith and Kuecken were charged in a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). ECF 13.

On March 7, 2023, pursuant to a plea agreement, Smith pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Smith agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Smith now faces a sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, he faces up to six months of imprisonment and a fine of up to $5,000. Smith must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of the recommended sentence of 90 days' home detention and three years' probation.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 579 F.Supp.3d 1, 8 (D.D.C. 2021). While assessing Smith's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Smith, the absence of violent or destructive acts is not a mitigating factor. Had Smith engaged in such conduct, she would have faced additional criminal charges.

A particularly aggravating feature of Smith's offense is that he and Kuecken witnessed the upheaval on the East Front of the Capitol, including a rioter yelling, "Get 'em, get 'em, get 'em,"

and rioters rushing toward and into the Capitol. Smith observed that the doors to the Capitol had

been closed. Only after other rioters succeeded in overrunning the police officers protecting the

Capitol and then observing that the doors to the Capitol were open, did Smith make the decision

to enter the Capitol. He told Kuecken, "Let's go take a look," and entered the Capitol. He and

Kuecken entered the Rotunda and left only after he and Kuecken were told to leave by at least one

police officer when the police were forcing rioters out of the Capitol.

Smith has not demonstrated any remorse for his participation in the riot.

Accordingly, the nature and circumstances of this offense establish the clear need for a

sentence of home detention.

### B.  Smith's History and Characteristics

As set forth in the Presentence Investigation Report ("PSR"), Smith is 71 years old, a

widower, and a retiree. PSR ¶¶ 31, 35, 45-47.  Smith has no criminal history. PSR ¶¶ 24-25. He

attended Oakland Community College and received an associate degree in law enforcement and

nursing.  PSR ¶ 43.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As

with the nature and circumstances of the offense, this factor supports a sentence of incarceration,

as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United*

*States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I

don't think anyone should start off in these cases with any presumption of probation. I think the

presumption should be that these offenses were an attack on our democracy and that jail time is

usually – should be expected") (statement of Judge Hogan).

10

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

As the images above show, Smith and Kuecken stood the amid the rioters on the East Front of the Capitol. The video referenced above also shows that Smith and Kuecken entered the Capitol without going through magnetometers or other security protocols required to enter any federal facility and while alarms were blaring. Additionally, even though police were manning the Rotunda doors when they entered, they ignored the obvious fact that the police had had to relent to the massive crowd after being assaulted and overrun by the rioters. Smith and Kuecken had to be told to leave the Capitol. Thus, a sentence of home detention as part of a term of probation is warranted to deter similar conduct in the future.

**E.  The Need to Avoid Unwarranted Sentencing Disparities**

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence Smith based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Smith has pleaded guilty to Count Four of the Information, charging him with Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may

have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range for a petty offense is zero to six months. Given that narrow range, a sentence of six months, at the top of the statutory range, will not create an unwarranted disparity with a sentence of probation only, at the bottom. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71

14

(ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, at least the following three cases are comparable.

In *United States v. Joshua Bustle and Jessica Bustle,* 21-cr-238 (TFH), the defendants drove from Virginia to D.C. and were present at the Capitol Building on January 6. They entered the building through the Rotunda Doors after they were breached by other rioters approximately 20 minutes earlier. There were clear signs of damage in the area that the defendants entered as the doors' windows were smashed. The Bustles remained inside the Capitol for approximately 20 minutes and left. Smith and Kuecken breached the Capitol through the same broken doors as the Bustles and with alarms blaring. The Bustles, like Smith, did not engage in any threatening, violent or destructive activity, although Jessica Bustle made inflammatory statements about the riot on social media. Judge Hogan sentenced Joshua Bustle to 30 days' home detention as part of a term of 24 months' probation and sentenced Jessica Bustle to 60 days' home detention as part of a term of 24 months' probation.

In *United States v. Fox*, 21-cr-435 (BAH), the defendant breached the Capitol by climbing through one of the Sente Wing windows. Fox remained in the Capitol for less than two minutes, while Kuecken and Smith remained inside for between four and five minutes. Fox failed to express remorse for his actions, declaring that in terms of breaching the Capitol, "I'd do it again." While neither Smith nor Kuecken has said that they would repeat their actions, they have each downplayed their criminal conduct on January 6 and failed to sincerely express genuine remorse.

Judge Howell sentenced Fox to two months' home detention as part of a term of 36 months' probation.

Finally, in *United States v. Gary Wickersham*, 21-cr-606 (RCL), the defendant was among the first people to breach the Capitol via the Senate Wing Door. While speaking to a police officer, he swiped at and may have minor physical contact with the officer's arm. While leaving the Capitol, he held the door open for other rioters to enter. About five days after the riot, Wickersham told an FBI agent that he believed that his presence in the Capitol was justified given his status as a taxpayer and that the whole things was a setup by antifa. This Court sentenced Wickersham to 3 months' home detention.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Smith to 90 days' home detention as part of a 24-month term of probation, 60 hours of community service, and $500 restitution. Such

16

a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on his liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    s/ Anita Eve
Assistant United States Attorney
PA Bar No. 45519

## **CERTIFICATE OF SERVICE**

On this 1st day of June 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

 /s/ Anita Eve
Assistant United States Attorney
PA Bar. No. 45519